FINN *v.* SOWDERS' ESTATE.[1]

1. WITNESSES — COMPETENCY — MATTERS WITHIN KNOWLEDGE OF DECEASED.

A husband cannot testify to conversations between himself and decedent which are relied upon as forming the contract between his wife and decedent on which the wife bases a claim against decedent's estate. Act No. 30, Pub. Acts 1903.

2. WORK AND LABOR—SERVICES RENDERED TO DECEASED— CLAIM UNDER WILL.

One who accepts the terms of a will, and retains the property granted thereby as compensation for services rendered testator, cannot make a further claim against the estate for compensation.

Error to Bay; Shepard, J. Submitted January 19, 1905. (Docket No. 85.) Decided April 21, 1905.

Christie Finn presented a claim against the estate of Minerva Sowders, deceased, for services rendered. The

---

[1] Rehearing denied May 12, 1905.

claim was allowed in part by the commissioners, and defendant appealed to the circuit court. There was judgment for claimant at the circuit, and defendant brings error. Reversed.

*T. A. E. & J. C. Weadock*, for appellant.

*Lee E. Joslyn*, for appellee.

MONTGOMERY, J. In the year 1898 Minerva Sowders was the owner of two houses in West Bay City, in one of which she lived, had an income of about $7 a month from a land contract on lands recently theretofore sold by her, and an additional income of $8 a month from a government pension. She was of advanced age, and was suffering from cancer. During the year 1898 her granddaughter, Christie Finn, claimant in this case, came to her on a visit. A short time afterwards her husband, William Finn, also came to West Bay City, and the two thereafter lived rent free with Mrs. Sowders in one of the latter's houses, and this arrangement continued until the time of Mrs. Sowders' death, September 17, 1902. During that time Mrs. Sowders submitted twice to surgical operations for cancer. During all of this time Mrs. Finn resided with her. Mrs. Sowders was an invalid, confined to her bed a great portion of the time, and in need of constant care and attention. It is not disputed that Mrs. Finn gave her such attendance and care during that time as one member of a family would and should give another under such circumstances, and that this attendance involved considerable extra work on Mrs. Finn's part in addition to her work as housekeeper.

On June 17, 1902, Mrs. Sowders made a will, that portion of which pertinent to this case was as follows:

"I give, devise, and bequeath my estate and property, real and personal, as follows, that is to say, I give, devise, and bequeath to my three sons and granddaughter, Christie Finn, Charles Orrin Sowders, Samuel Sowders, George Washington Sowders, and Christie Finn, all of my real es-

tate, consisting of lot eight in block four, Mulholland & Shearer's addition to West Bay City, Michigan, with dwellings thereon, to be divided between them equally, share and share alike, provided all of my legal debts, my funeral expenses, and the expenses of my last sickness shall be paid first.

"My household furniture and personal effects I bequeath to my granddaughter, Christie Finn, provided that she remains in my house and boards me for the rent of the two houses until my death, but should said Christie Finn leave my house and fail to do as she agreed, I bequeath to her one dollar only, and the personal and real estate property to be divided equally among my three sons above mentioned."

After Mrs. Sowders' death, and after the opening of the will, Mrs. Finn accepted the devises and bequests made her therein, and then filed a claim against Mrs. Sowders' estate, which claim is as follows:

"Estate of Minerva Sowders, deceased, In account with Christie Finn, Dr. 1902, June 17, To board, lodging, nursing and care, from September 15, 1898, to June 17, 1902, 45 months at $12.00 per month, * * * $540.00."

This claim was duly presented to the probate court, and by it allowed at the sum of $304, from which allowance an appeal was taken by the administrator to the circuit court, and where, after a jury trial, the claim was allowed at the sum of $403.

Upon the trial, plaintiff's husband, under the defendant's objection, was allowed to testify that, when his wife and he first came to West Bay City, Mrs. Sowders asked them to stay there and take care of her as long as she lived, and in return that she would leave Mrs. Finn her property when she died. He also testified to a like agreement made about 10 months before Mrs. Sowders' death. Both of these conversations which he testified to were between himself and Mrs. Sowders, and evidently constitute the express agreement upon which the claimant relies. Mr. Finn also testified that he himself furnished the house and supplied the table from September, 1898, to the date of

139 MICH.—40.

Mrs. Sowders' death.   Other witnesses produced by the claimant testified as to statements made by Mrs. Sowders during her lifetime as to her intentions to leave her property to the claimant at her death, but none of these witnesses testified that Mrs. Sowders ever admitted the existence of any contract or agreement whatsoever between herself and Mr. or Mrs. Finn, or the existence of any obligation whatsoever on her part to leave her property to Mrs. Finn.

The testimony of these witnesses may be said to be consistent with a purpose on the part of Mrs. Sowders to provide for the claimant by testamentary bequest according to her own notions of right; but assuming that the testimony was open to the construction contended for by claimant, i. e., that Mrs. Sowders had agreed to pay for these services, there is, in our view, manifest error which makes a reversal imperative.   Under the circumstances of this case, the testimony of claimant's husband to facts equally within the knowledge of the deceased should have been excluded,   under   section   10212,   3   Comp.   Laws,   as amended  by  Act  No. 30,  Pub. Acts  1903.   This case is not distinguishable from *Stackable* v. *Stackable's Estate*, 65 Mich. 515.

The court submitted to the jury the question whether there was an acceptance of the terms of the will by the claimant.   Her testimony shows that, with full knowledge of the provisions of the will, she accepted the personal property and continued to live in the house, and testified in answer to the question, "You are claiming all the household goods and the interest in the real estate?" "Yes, sir."   On this record a verdict should have been directed for the estate.

Judgment reversed, and a new trial ordered.

MCALVAY, GRANT, BLAIR, and OSTRANDER, JJ., concurred.